# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE ROYCE WILLIAMS,<br><br>    Petitioner,<br><br>    v.<br><br>STEVE MOORE,<br><br>    Respondent.<br>_____/ | CV F 05-00882 OWW DLB HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>[Doc. 1] |

    Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by John Paul Ward, esq.

## BACKGROUND

    On July 2, 2002, following trial by jury, Petitioner was found guilty of ten counts of robbery (Cal. Pen. Code § 211; counts 1, 2, 6-10, 14-18)[1] and one count of escape (§ 4532(b); count 22), plus allegations of personal use of a weapon (§ 12022.5) and being armed with a shotgun (§ 12022(a)), and enhancements for three prior convictions (§ 667(a)) and two prior prison terms (§ 667.5(b)). He was sentenced to a total state prison term of 216 years. (Lodged Doc. No. 1; CT 558-564.)[2]

    Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth Appellate District. On March 5, 2004, the Court of Appeal reversed counts 6 and 16 and

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

[2] "CT" refers to the Clerk's Transcript on Appeal; "RT" refers to the Reporter's Transcript on Appeal.

1

remanded the case for resentencing. The judgment and sentence was affirmed in all other respects. (Lodged Doc. No. 5.)

On April 6, 2004, Petitioner filed a petition for review with the California Supreme Court. The petition was denied on May 12, 2004. (Lodged Doc. No. 6.)

On November 3, 2004, Petitioner was resentenced to state prison for a 213-year term. (Lodged Doc. No. 7.)

Petitioner has not filed a post-conviction collateral challenge in any state court.

## STATEMENT OF FACTS[3]

COUNTS I & II (ROUND TABLE PIZZA)
  On January 9, 1997, a male wearing a hooded sweatshirt entered a Round Table Pizza in Modesto and went behind the counter. The man, who appeared to be carrying a weapon wrapped in a shirt, told the employees to get down on the floor. He ordered Rachel Pine, the shift manager on duty, to open the register. Pine had the code to open only one register but found Felicia Champeaux, another employee, to open the other. The man also ordered Pine to open the safe. Pine was afraid the man would kill one or all of them.
  The man demanded that the delivery driver, Michael Liese, hand over the keys to the delivery truck, as well as the bag of delivery money. He ordered Liese to take him to the truck and start it, and the man then drove away in the delivery truck with the green bank bag containing cash and checks from that evening's deliveries.
  Liese was never asked to identify the man after the robbery. At trial, five years later, Liese testified that he was about 70 percent certain [Petitioner] was the person who robbed him. Pine was not able to identify [Petitioner] at trial. Champeaux could not positively identify [Petitioner] at trial, but had picked him out of a lineup shortly after the robbery.

COUNTS VI & VII (GRIFFEN SHELL)
  On January 18, 1997, at approximately 1:00 a.m., two young males entered a mini-mart at the Griffen Shell gas station in Ceres. One of the men told employee Victoria Clark to give him the money from the till. Clark thought the man was holding a gun, but it was covered with a towel. While the other man repeatedly stated, "Let's go, let's go," Clark gave the man the money and he took two rings from her. The men also took a carton of cigarettes.
  Clark identified [Petitioner] as one of the two robbers at a lineup a month and a half after the robbery.

COUNTS VIII, IX & X (MOTEL 6)
  On the evening of January 20, 1997, a man with a gun in his hand ran into the motel manager's apartment at a Motel 6 in Modesto and grabbed the manager, Lauretta Aro. The man led Mrs. Aro and her husband at gunpoint into the motel office. The gun was large, like a rifle or shotgun. A second man was in the office. The second man ordered the desk clerk, Pamela McGinnis, to give him the money from the cash register. The first man took McGinnis's watch and Mrs. Aro's rings.

---

[3] The Court finds the Court of Appeal correctly summarized the facts in its March 5, 2004 opinion. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

2

Mrs. Aro was not able to identify [Petitioner] at trial. McGinnis identified [Petitioner] as one of the robbers at a police lineup a month or so after the robbery.

COUNTS XIV & XV (KENTUCKY FRIED CHICKEN)

Two men entered a Kentucky Fried Chicken on January 24, 1997, at approximately 9:30 p.m. One of the men was carrying a rifle and he slipped and fell on top of employee Kristy Renteria as he went behind the counter. Renteria's chin was split open and required 23 stitches. The man got up, ran to the back of the restaurant and hit another employee, Darlene Souza, in the face with the barrel of the weapon. Souza's injury required five stitches.

The man then came back to the front of the restaurant and led comanager Maria McKenna to the register. The man took from the register the box containing bills $20 and larger. After emptying the cash register, the robbers stole McKenna's purse. McKenna's credit cards were recovered in January 1997 from the apartment where [Petitioner] was living.

At trial, McKenna was 50 percent certain [Petitioner] was the man holding the rifle during the robbery. Renteria identified [Petitioner] in a photographic lineup in January 1997. In March of that same year, she viewed a physical lineup and identified [Petitioner] as one of the robbers.

COUNTS XVI, XVII & XVIII (McDONALD'S)

On January 25, 1997, at 11:30 p.m., as assistant manager Jamie Simal was preparing to lock up at a McDonald's in Ceres, he felt a gun against the back of his head. A second man accompanied the man with the firearm. The robbers led Simal to the office, where second assistant manager Katherine Parsons Kindle was preparing to count the money in the tills.

One of the robbers entered the office with Simal, waving his weapon around and ordering Simal to get the money out of the safe and Kindle to remove the money from the tills. One robber told Kindle that if she tried anything, he would blow her head off. Kindle was ordered to give the robber her engagement ring. The man told Simal and Kindle to stay on the floor. The money from Simal's wallet was taken and the wallet thrown back to him. The purse of another employee, Precious Alata, also was taken. Alata explained that she had left her purse at the restaurant but was not working at the time of the robbery. She also thought the purse was new and may have been empty when it was taken.

Kindle identified [Petitioner] in a physical lineup in March 1997 and at trial as the robber who came into the office. Simal identified [Petitioner] at a lineup in March 1997 and at trial as the robber who held the rifle.

OTHER EVIDENCE

In January 1997, [Petitioner] lived with Shervondalyne Scott. That month, Scott found a sawed-off shotgun in her closet. After [Petitioner]'s arrest, Scott told the police that [Petitioner] had told her that he and Gerald Collins had robbed Popeye's.[4] Scott testified that she and [Petitioner], neither of whom were working, always had plenty of money because [Petitioner] would go out in the evening and return with "lots of money."

Scott testified that [Petitioner] told her he once told a lady to get down, and when she did not comply, "someone shoved her, and she hit her head." Although [Petitioner] did not tell Scott what he was doing at the time, he also told her that on another occasion away from the apartment he slipped and fell. Scott found a green money bag Collins brought to the apartment. It contained some checks. Scott also found credit cards and purses in the apartment which did not belong to anyone living there.

---

[4] [Petitioner] was charged in count III with the robbery of Popeye's Chicken, but the jury deadlocked on that count and a mistrial was declared.

3

INVESTIGATION OF THE ROBBERIES

Detective Adam McGill investigated the series of robberies that took place in January 1997 in Stanislaus County. Detective McGill interviewed Colins, who told him he stayed in the vehicle when [Petitioner] and Sean Pope[5] drove to McDonald's and robbed the restaurant.

In February 1997, following [Petitioner's] arrest, Detective McGill attempted to put together a lineup including [Petitioner]. Shortly before the lineup, [Petitioner] shaved his head. A month later, [Petitioner] did participate in a physical lineup.

[PETITIONER'S ESCAPE (COUNT XXII)

[Petitioner] was arrested at a motel on February 1, 1997. Several weeks later, [Petitioner] assisted with laundry duty. When some of the inmates could not be located, Sheriff's Deputy Anthony Jones became suspicious and found [Petitioner] and another inmate in the laundry transport van. An escape alarm was sounded. One of the inmates in the van kicked out a window and [Petitioner] crawled out and escaped.

The following day, Officers Allen Brocchini and Timothy Helton went to a residence in search of [Petitioner]. As Brocchini spoke to the occupants of the house, Helton saw [Petitioner] push out a bedroom window screen and run from the house. After a chase, [Petitioner] was apprehended.

DEFENSE

An expert in eyewitness memory testified as to the inaccuracy of such identifications. In a photographic lineup which did not include [Petitioner], Clark, a victim of the Shell robbery, identified someone other than [Petitioner] as the man who robbed her and stole her rings. In that same photographic lineup, Souza and McKenna, victims of the Kentucky Fried Chicken robbery, did not identify anyone, but Renteria stated one person in the lineup "most resembled" the robber. McKenna was also shown another photographic lineup which did include [Petitioner], but she did not identify him.

(Opinion, at 2-6.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

---

[5] Pope was originally [Petitioner's] codefendant, but was not tried with [Petitioner].

4

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.      Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v.

Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.  Violation of Constitutional Right to Testify

Petitioner contends that he was denied the right to testify in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Petitioner presented this claim to the California Supreme Court in a petition for review which was denied without comment on May 12, 2004. (Lodged Doc. No. 6.) Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

A defendant's right to testify on his own behalf at a criminal trial arises from several provisions of the Constitution, including the Fourteenth Amendment due process right to an opportunity to be heard in his defense, the Sixth Amendment right to call "witnesses," and the Fifth Amendment right not to be compelled to incriminate oneself. Rock v. Arkansas, 483 U.S. 44, 51-52 (1987); United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999). This right is personal and only the defendant may waive it. See Jones v. Barnes, 463 U.S. 745, 751 (1983); United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). However, the trial judge has no duty to advise the defendant of this right. Id. at 178. The Ninth Circuit has specifically stated:

> Although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify. [citation.] The trial court 'has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred.' [citation.] Rather, if the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer. [citation.] Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so. [citation.]

Id. at 177 (internal citation and quotation sources omitted). Thus, although the waiver of the right to testify must be knowing and intelligent, it need not be explicit. Id. at 177.

In the instant case, after the defense rested and the jury had been excused for the day, the court, counsel, and Petitioner had a discussion regarding various issues including exhibits, jury instructions, and scheduling. During this discussion, the following exchange took place:

> [TRIAL COUNSEL]: Judge, I'd like to put on the record that my client made a decision not to testify.
> [PETITIONER]: No, I didn't. I made a decision to testify, and he told me I can't testify.
> [TRIAL COUNSEL]: No.
> [PETITIONER]: That's what you said. And he don't want me to address the Court, which has been a problem all during the trial, and I've asked if I can speak now, Your Honor.
> [THE COURT]: Well - -
> [TRIAL COUNSEL]: I'll tell him.
> [THE COURT]. Mr. Wentz, I gather you have discussed with your client the very important issue of whether he testifies or not?
> [TRIAL COUNSEL]: Yes, yes.
> [PETITIONER]: No, you haven't
> [THE COURT]: You've given him your advice as to that matter?
> [TRIAL COUNSEL]: Yes, I have.
> [PETITIONER]: No, you haven't.
> [THE COURT]: And you have rested; is that correct?
> [TRIAL COUNSEL]: And I have rested.
> Judge, just before I rested, I did not ask my client for the last time, are you sure you don't want to testify? I realize that. I just want to make it clear. I think he's hearing this information about the escape and that's gotten him interested in testifying. I'm trying to tell him, if he does that, it opens up all the robberies, everything. It wouldn't be limited to testimony regarding what happened on the escape. So I'm strongly recommending that, despite the fact that I've rested, that he not testify.
> [THE COURT]: Well, I don't interfere in that issue. I just want to make sure, [trial counsel], that you and [Petitioner] have discussed the matter and a decision has been made. It appears a decision was made that you had rested. If this is going to change, the Court, of course, has to know that, and then you'd have to make a motion to reopen.
> [TRIAL COUNSEL]: Yes.
> [THE COURT]: I won't speculate on how that will be ruled on, because I haven't heard the motion, and neither did I - - or was I aware that this issue would arise at this juncture.

1  So I'll recess for the day. We're going to be back on Monday at 9:30.
(RT 1054-1055.)

On the following Monday, court resumed, and counsel proceeded with their closing arguments. The jury was subsequently instructed and deliberations commenced. (RT 1056-1137.) However, while the jury was deliberating, the prosecutor brought up the issue of Petitioner's desire to testify:

> [PROSECUTOR]: Yes. Your Honor, regarding the [Petitioner's] choice not to testify, when we last discussed the matter on the record, it seemed to me that we left it with the [Petitioner] indicating that he wanted to testify, and [trial counsel] indicating that they had made a decision prior to the close of evidence not - - for him to not testify. I just wanted to clarify that on the record so that the record is clear that the defendant did agree to not testify prior to the close of evidence.
> [THE COURT]: The record's clear, is it not, [prosecutor], already that the defendant has not elected to take the witness stand; is that correct?
> [PROSECUTOR]: Yes, it is. As far as that - - I was just concerned about the comments the [Petitioner] made at the close of court on Friday.
> [THE COURT]: Well, I don't think it's the Court's province to cross-examine either counsel or the defendant as to whether the defendant decides to or decides not to testify. So I'm reluctant to get into that in any manner, [prosecutor]. The record's, it seems to me, clear that the [Petitioner] has not testified; is that true?
> [PROSECUTOR]: That's true.
> [THE COURT]: And I've given the appropriate instructions having to do with that.
> [PROSECUTOR]: Yes.
> [THE COURT]: Is there anything else you have on that issue?
> [PROSECUTOR]: No.
> [THE COURT]: Mr. Wentz, anything else from you?
> [TRIAL COUNSEL]: No.

(RT 1147-1148.)[6]

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held in relevant part:

> A trial court is generally not required to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right. Instead, a defendant is assumed to assent "in the absence of [his or her] express objection." (*People v. Guzman* (1988) 45 Cal.3d 915, 935-936, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) However, if the trial court is alerted to a conflict between defendant and counsel, the court is required to advise the defendant of the right to testify and to obtain an on-the-record waiver of that right. "When the decision is whether to testify [citation] or whether to

---

[6] As Petitioner acknowledges in his petition, immediately after the discussion above, Petitioner's trial counsel informed the court that Petitioner was requesting an in camera hearing, which was granted. (RT 1148.) Petitioner concedes that "[t]he concerns addressed at the in camera hearing do not in any way relate to the controversy over [Petitioner's] failure to testify presented in this argument. (See RT 1149-1157.)" (Petition, at p. 5.)

8

present a defense at the guilt phase of a capital trial [citation], it is only in case of an express conflict arising between the defendant and counsel that the defendant's desires must prevail. In the latter situation, there is no duty to admonish and secure an on the record waiver unless the conflict comes to the court's attention. [Citation.]" (*In re Horton* (1991) 54 Cal.3d 82, 95.)

In People v. Bradford, supra, defense counsel informed the trial court, outside the presence of the defendant, that they would rest without calling any witnesses and without having the defendant testify. (15 Cal.4th at pp. 1331-1332.) Defense counsel advised the court that the defendant had vacillated in his decision whether to testify. The trial court informed defense counsel they could rest without mentioning the defendant's desire to testify and that, if the defendant did not raise the issue on his own, the court would not raise it for him. (Id. at pp. 1332.) The defense then rested without comment from the defendant. On appeal the court found that no express conflict between counsel and defendant had emerged, and that there was no obligation on the part of the trial court to advise the defendant of his right to testify or to obtain his waiver of that right. (*Id.* at pp. 1332-1333.)

[Petitioner] distinguishes *Bradford*, claiming that here the trial court alerted to an express disagreement between [Petitioner] and his attorney and thus was required to advise and inquire. We disagree. As indicated by respondent, [Petitioner's] desire to testify was voiced following discussion between counsel concerning [Petitioner's] justification for his escape. Defense counsel noted that he had tried to explain to [Petitioner] that, by testifying, he would expose himself to cross-examination concerning the various robberies with which he was charged. Following his statement to the trial court, [Petitioner] did not reassert his desire to testify, and he did not do so when trial resumed the following Monday.

On this record, it can be argued that any conflict between [Petitioner] and defense counsel had been resolved, and that the trial court was not required to advise [Petitioner] of his right to testify or to obtain an on-the-record waiver of that right. The record is insufficient to show otherwise, and we reject [Petitioner's] contention to the contrary. (*People v. Coley* (1997) 52 Cal.App.4th 964, 972 [appellant bears burden of producing record affirmatively demonstrating error and prejudice].)

(Opinion, at 9-10.)

Petitioner argues that in placing the burden upon him to show that he did not waive his right to testify, the Court of Appeal failed to follow controlling Supreme Court precedent. Specifically, Petitioner contends that the Court of Appeal was required to "indulge every reasonable presumption against waiver" and "not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Petitioner reasons that in applying a much more foregiving standard, the state court decision was "contrary to ... clearly established federal law. . . ." and such error had a substantial and injurious influence on the

outcome in this case. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).[7]

The Court finds that the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. A waiver of the right to testify may be inferred from the petitioner's conduct and is presumed if the petitioner failed to testify or notify the court of his desire to do so. Joelson, 7 F.3d at 177; see also Horton v. Mayle, 408 F.3d 570, 577 (9th Cir. 2005); Dows v. Woods, 211 F.3d 480, 487 (9th Cir. 2000);

Contrary to the argument presented by Petitioner, the Court of Appeal's decision is not contrary to the following Supreme Court authority. In Carnley v. Cochran, 369 U.S. 506, 516 (1962), the Supreme Court held that the trial court must clearly determine whether there has been a proper waiver of the right to counsel. The Court held that absent a plea of not guilty or affirmative waiver, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." Canley, 369 U.S. at 516. In Johnson v. Zerbst, 304 U.S. 458, 464 (1938), although the Supreme Court stated that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights," it recognized that "[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Distinguishable from the instant case, these cases involve a claim regarding the denial of the ineffective assistance of counsel. However, as stated above, a review of the factual circumstances surrounding the waiver of the constitutional right is appropriate.

Here, as found by the Court of Appeal, the record clearly demonstrates that Petitioner was well aware of his right to testify and acquiesced in his counsel's advise to not do so. First, Petitioner stood by silently while defense counsel advised the court that the defense rested. Second, it was not until after the close of the evidence and in the face of argument by the prosecutor that Petitioner could not present evidence to establish a defense of necessity, absent actual testimony from Petitioner, that Petitioner chose to voice his objection that he wished to

---

[7] **The Court notes that Petitioner does not claim that he was not advised or otherwise aware of his right to testify.**

testify. As defense counsel stated, it appeared that Petitioner's desire to testify stemmed from hearing the prosecutor's argument regarding his attempted defense. Third, after the trial court advised Petitioner that it did not interfere with the issue of whether he should or should not testify and it appeared the decision had already been made, Petitioner failed to voice any objection when court resumed the following Monday morning, despite the trial court's advisement that a motion to reopen the case would have to be filed. Fourth, even after the issue was brought to the Court's attention after the case was submitted to the jury for deliberations, Petitioner again failed to voice any objection when the trial court specifically found that Petitioner had made the decision not to testify. Petitioner cannot stand quiet in the face of the trial court's specific finding that he chose not to testify, and then cry fowl on collateral review. The trial court properly advised and inquired as to whether Petitioner and his counsel had discussed the issue of whether to testify and inquired if counsel had given his advise. Further inquiry from the trial court would have been problematic, as the Ninth Circuit recognized in United States v. Martinez, 883 F.2d 750, 756 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470 (9th Cir. 1991), judicial interference with the strategic decision poses a danger that "the judge will appear to encourage the defendant to invoke or waive this right. . . . This danger is of great significance because the right not to testify counterpoises the right to testify, and the exercise of one is the waiver of the other." (citations omitted). Based upon these circumstances, the trial court reasonably presumed that Petitioner knowingly and intelligently waived his right to testify by acquiescing to his attorney's advice, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus is DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    **Dated:**   **May 24, 2007**                  **/s/ Dennis L. Beck**
                                                                                UNITED STATES MAGISTRATE JUDGE